WALLING, Adm'r of Wage and Hour Division, U. S. Department of Labor, v. FRIEND et al.

No. 320.

District Court, W. D. Missouri, S. W. D.

Oct. 16, 1945.

Walter R. Fly, of Kansas City, Mo., Samuel P. McChesney, of St. Louis, Mo., and Joseph I. Nachman, of Washington, D. C., for plaintiff.

Gene Frost and Jim Poynor, both of Joplin, Mo., for defendants.

REEVES, District Judge.

This is an action by the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin the defendants from alleged violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. It is charged substantially that, being engaged in interstate commerce, records have not been kept as required by the act, and employees have been required to work overtime for which no compensation has been awarded.

There is no controversy on the facts of the case. The defendants are engaged as brokers or selling agents for shipments of livestock at the stockyards at Joplin, Missouri. They have been so engaged for a number of years and certain employees mentioned in the evidence worked for the defendants at said yards over a period of several years immediately preceding the filing of this suit. The defendants acted as consignees as well as agents for shippers of livestock to the said yards. Sales were then made by them to purchasers, being mainly the large packers. Such livestock was then shipped for the most part to points outside the State of Missouri. Only a small percentage of the livestock handled by the defendants on consignment were shipped to them from points outside the State of Missouri.

Defendants have very few employees. According to the stipulation of facts, two of the employees have worked overtime for periods ranging from 15 to 20 weeks of each year. According to the evidence, however, one of said employees has not in fact worked overtime for these defendants. Admittedly, no records have been kept as required by the Wage and Hour Law relating to employment in interstate commerce. Said employees kept records of sales made by defendants and advised the seller of the prices obtained, the commissions charged, and then made settlement with the principal. In like manner, they kept records of the purchases and acquainted the purchaser with the amounts due and payments were made through them.

The question for decision upon the above facts is whether the said employees were and are engaged in interstate commerce or the production of goods for interstate commerce. If not so engaged, then plaintiff is not entitled to the relief sought, and, if so engaged, he is.

1. An examination of the statute, Section 207 Title 29 U.S.C.A. discloses that the prohibition of the statute is against employers who shall "employ any of his employees who is engaged in commerce or in the production of goods for commerce— * * * (3) for a workweek longer than forty hours * * *" etc.

Admittedly, the employees under consideration had worked for a period entitling them to the benefit of the 40 hour week if they were subject to the act. The reference to commerce, of course, means interstate commerce. The said employees had nothing to do with the handling of the livestock or its production or its transfer from one state to another. Such livestock was brought into the yards at Joplin, where the defendants acted as sales agents for the shippers or consignors. For this purpose the livestock came to rest. The defendants had nothing to do with the shipment of livestock into the yards nor were they interested or concerned with its disposal after the sales were consummated. The employees merely aided in the transfer of title and made book entries relating to the consideration. Unless the act of Congress specifically made such transactions subject to the law, then quite clearly the work done by these employees had nothing directly to do with interstate commerce.

2. The act was construed in Kirschbaum Co. v. Walling, 316 U.S. 517, loc.cit. 522 and 523, 62 S.Ct. 1116, 86 L.Ed. 1638. The court, at page 522 of the opinion in 316 U.S., at page 1120 of 62 S.Ct., 86 L.Ed. 1638, adverted to the history of the legislation and said:

"As passed by the House, the bill applied to employers 'engaged in commerce in any industry affecting commerce.' * * * But the bill recommended by the conference applied only to employees 'engaged in commerce or in the production of goods for commerce.'"

It was further pointed out by the court that in intermediate stages of the bill it was sought to introduce regulations appertaining to intrastate production that might be competitive with interstate commerce. Such a provision was rejected so that the purpose of Congress became obvious. It intended to exclude all employment save only such as might be involved directly in commerce or in the production of goods for commerce. It excluded those employed in industries affecting commerce only.

3. Able counsel for the administrator place reliance upon the case of Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L. Ed. 735, 23 A.L.R. 229. This is an exhaustive opinion, and, at page 528 of 258 U.S., at page 406 of 42 S.Ct., 66 L.Ed. 735, 23 A.L.R. 229, the Supreme Court justified the inclusion of stockyards and market agencies for supervision by the Secretary of Agriculture as follows:

"As already noted, the word 'commerce,' when used in the act, is defined to be interstate and foreign commerce. Its provisions are carefully drawn to apply only to those practices and obstructions which in the judgment of Congress are likely to affect interstate commerce prejudicially."

It was under the aegis of this interpretation that the court upheld the validity of the regulatory act relating to stockyards.

While there is no testimony as to the size of the Joplin stockyards, yet it may be suspected that said yards are not of the area to invoke the application of the stockyards act. At page 513 of the opinion in 258 U. S., at page 401 of 42 S.Ct., 66 L.Ed. 735, 23 A.L.R. 229, in Stafford v. Wallace, supra, the court said:

"Yards with a superficial area of less than 20,000 square feet are not within the act."

Assuming, however, that the yards in question are within the act, yet the employees upon the admitted facts were not engaged in the production of goods for commerce.

4. The case of Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, does not support the contention of the plaintiff. In the trial of the case the trial judge declined to include certain local employees as being within the benefits of the act. The Court of Appeals modified the judgment, and, at page 339 of 141 F.2d, discussed the relationship of the employees to interstate commerce. It was pointed out by the Court of Appeals that the records kept by the employees, and the transactions delegated to them, clearly and directly covered interstate transactions or interstate commerce. No such situation exists in the case at bar.

It follows that upon the admitted facts as well as the evidence in the case the plaintiff is not entitled to the relief sought and recovery will be denied.

I make the following Findings of Fact:

1. The defendants are engaged at the public stockyards, Joplin, Missouri, as consignees and agents for shippers of livestock for the purpose of effecting sales of such shipments at that point on commissions paid by the shippers.

2. A very small percentage of the shipments received by the defendants are from points outside the State of Missouri.

3. Less than fifty per cent of said livestock, after sales effected by the defendants, is shipped to points outside the State of Missouri.

4. One of the two employees mentioned in the stipulation and evidence for several years preceding the filing of this suit, to-wit, on December 14, 1944, habitually worked more than 40 hours per week for a total number of approximately 20 weeks per year. While the stipulation said that a second employee had, in like manner, worked overtime, yet, upon examination in open court, he testified that he divided his time between these defendants as his employers and another employer so that, it was disclosed, he had not worked overtime at any period for these particular defendants. However, in the view taken of the case, this becomes unimportant.

5. The employees of the defendants merely recorded the sales transactions, and

the purchase money was paid through them. For the seller, they recorded the purchase price, made entries for commissions and other proper charges, and notified the shipper of the balance due him. In like manner, they advised the purchaser of the consideration owed, and received the payment. When so received, they deducted commissions and expenses and remitted the balance to the seller.

I state the following Conclusions of Law:

1. The employees of the defendants were not engaged in commerce or in the production of goods for commerce.

2. While under the construction of the Packers and Stockyards Act of 1921, 7 U. S.C.A. § 181 et seq., the defendants were engaged in business affecting interstate commerce, the transaction under observation did no more than that, and under the authorities this was not enough to invoke the provisions of the statute relied upon by the plaintiff.